IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MEDIATEK INC. and | ) | |
| MEDIATEK USA INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | C.A. No. 19-368 (CFC) |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| ADVANCED MICRO DEVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## AMENDED COMPLAINT

Plaintiffs MEDIATEK INC. and MEDIATEK USA INC. (together "MediaTek" or "Plaintiffs"), for its Complaint against ADVANCED MICRO DEVICES, INC. ("AMD" or "Defendant"), hereby alleges as follows:

## PARTIES

1.     Plaintiff MEDIATEK INC. is a Taiwanese company incorporated under the laws of Taiwan with its principal place of business located at No. 1, Dusing Road 1, Hsinchu Science Park, Hsinchu City 30078, Taiwan.  MediaTek Inc. is the assignee of all patents identified in this Complaint including all rights to sue for past and future damages for infringement of said patents.

2.     Plaintiff MEDIATEK USA INC. is a corporation organized and existing under the law of the State of Delaware with its principal place of business located at 2840 Junction Avenue, San Jose, California, 95134 and other locations in Austin, Texas, Bellevue, Washington, Irvine, California, San Diego, California, San Jose, California, and Woburn, Massachusetts.  MediaTek USA Inc. is a wholly-owned subsidiary of MediaTek Inc. and has a license under the patents asserted here.

3.      Upon information and belief, AMD is a corporation organized and existing under the law of the State of Delaware, and maintains its principal place of business at 2485 Augustine Dr., Santa Clara, CA 95054 and principal administrative facilities as well as Corporate Secretary at 7171 Southwest Parkway, M/S B100.2, Austin, Texas 78735.

## NATURE OF THE ACTION

4.      This is a civil action for infringement of the following patents by Defendant AMD: U.S. Patent Nos. 7,467,255 ("the '255 Patent"), 7,652,938 ("the '938 Patent"), 7,667,302 ("the '302 Patent"), 8,072,004 ("the '004 Patent"), 8,772,928 ("the '928 Patent"), and 8,860,544 ("the '544 Patent") (collectively, the "Asserted Patents").  This action is based upon the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.      This Court has personal jurisdiction over AMD because AMD is incorporated in Delaware.  AMD also manufactures products that are and have been used, offered for sale, sold, and/or purchased in the District of Delaware.

7.      Under 28 U.S.C. §§ 1391(b)-(d) and 1400(b), venue is proper in this judicial district because AMD is incorporated in this district, has committed acts of infringement within this judicial district giving rise to this action, has previously filed suit in Delaware, and does business in this district.

## MEDIATEK

8.      Established in 1997. MediaTek is the world's 4th largest fabless semiconductor company and sells products that power more than 1.5 billion new devices a year.  It is a leader in

chipset technology for Smart TVs, Voice Assistant Devices (VAD), Android tablets, feature phones, and Optical and Blu-ray DVD players, and it is number two globally in mobile phones.

9.      MediaTek's mobile chips support faster processing speeds, extended battery life, more responsive performance, and sharper, more colorful photographs and videos.

10.      MediaTek is also known for its advances in multimedia.   Its chipsets are optimized to balance high performance, power-efficiency, and connectivity.   MediaTek's products meet the latest demand of home entertainment and smart homes requiring vivid, Ultra-HD HDR images, incredible sound quality, and reliable connectivity.

## THE ASSERTED PATENTS

11.      On December 16, 2008, the U.S. Patent and Trademark Office duly and legally issued the '255 Patent, titled "Method for Calibration of Memory Devices, and Apparatus Thereof."  The '255 Patent names Hsiang-I Huang as the inventor.  The '255 Patent has been in full force and effect since its issuance.  MediaTek Inc. owns by assignment the entire right, title, and interest in and to the '255 Patent, including the right to seek damages for past, current, and future infringement thereof.  A copy of the '255 Patent is attached hereto as Exhibit A.

12.      On January 26, 2010, the U.S. Patent and Trademark Office duly and legally issued the '938 Patent, titled "Methods and Systems for Generating Latch Clock Used in Memory Reading."  The '938 Patent names Jui-Hsing Tseng as the inventor.  The '938 Patent has been in full force and effect since its issuance.  MediaTek Inc. owns by assignment the entire right, title, and interest in and to the '938 Patent, including the right to seek damages for past, current, and future infringement thereof.  A copy of the '938 Patent is attached hereto as Exhibit B.

13.      On February 23, 2010, the U.S. Patent and Trademark Office duly and legally issued the '302 Patent, titled "Integrated Circuit Chip with Seal Ring Structure."  The '302

Patent names Tien-Chang Chang, Shi-Bai Chen, and Tao Cheng as co-inventors. The '302 Patent has been in full force and effect since its issuance. MediaTek Inc. owns by assignment the entire right, title, and interest in and to the '302 Patent, including the right to seek damages for past, current, and future infringement thereof. A copy of the '302 Patent is attached hereto as Exhibit C.

14. On December 6, 2011, the U.S. Patent and Trademark Office duly and legally issued the '004 Patent, titled "Power and Ground Routing of Integrated Circuit Devices with Improved IR Drop and Chip Performance." The '004 Patent names Ching-Chung Ko, Tao Cheng, Tien-Yueh Liu, Dar-Shii Chou, and Peng-Cheng Kao as co-inventors. The '004 Patent has been in full force and effect since its issuance. MediaTek Inc. owns by assignment the entire right, title, and interest in and to the '004 Patent, including the right to seek damages for past, current, and future infringement thereof. A copy of the '004 Patent is attached hereto as Exhibit D.

15. On July 8, 2014, the U.S. Patent and Trademark Office duly and legally issued the '928 Patent, titled "Integrated Circuit Chip with Reduced IR Drop." The '928 Patent names Chih-Ching Lin, Ya-Ting Chang, and Chia-Lin Chuang as co-inventors. The '928 Patent has been in full force and effect since its issuance. MediaTek Inc. owns by assignment the entire right, title, and interest in and to the '928 Patent, including the right to seek damages for past, current, and future infringement thereof. A copy of the '928 Patent is attached hereto as Exhibit E.

16. On October 14, 2014, the U.S. Patent and Trademark Office duly and legally issued the '544 Patent, titled "Integrated Inductor." The '544 Patent names Ching-Chung Ko, Tung-Hsing Lee, Kuei-Ti Chan, Tao Cheng, and Ming-Tzong Yang as co-inventors. The '544

Patent has been in full force and effect since its issuance. MediaTek Inc. owns by assignment the entire right, title, and interest in and to the '544 Patent, including the right to seek damages for past, current, and future infringement thereof. A copy of the '544 Patent is attached hereto as Exhibit F.

## THE ACCUSED AMD INSTRUMENTALITIES

17.     AMD has infringed the Asserted Patents through the manufacture, use (including testing), sale, offer for sale, and importation of certain AMD processors and processor units identified in the sections below (the "Accused Instrumentalities"). For example, the Accused Instrumentalities include certain processors carrying the brand name EPYC for use with servers or embedded systems, such as the EPYC 7000 Series ("Accused EPYC Instrumentalities"). The Accused Instrumentalities also include certain processors carrying the brand name RYZEN, including the Ryzen 7, Ryzen 5, Ryzen 3, and Ryzen Threadripper. ("Accused Ryzen Instrumentalities"). The Accused Instrumentalities also include certain processors and processor units carrying the brand name RADEON, including the Radeon 550X, 540X, 535X, 530X, 520X, RX 500 Series, or RX 400 Series ("Accused Radeon Instrumentalities"). The Accused Instrumentalities also include certain processors and processor units carrying the brand name OPTERON, including the X3000 Series ("Accused Opteron Instrumentalities"). The Accused Instrumentalities also include certain processors and processor units carrying the brand name A-SERIES, including the A12, A10, A8, and A6 series ("Accused A-Series Instrumentalities"). The Accused Instrumentalities also include certain processors and processor units carrying the brand name FX, including the FX-4000 series, FX-6000 series, and FX-8000 series ("Accused FX Instrumentalities"). The Accused Instrumentalities also include certain processors carrying the brand name EMBEDDED R-SERIES, including the RX-200 series and the RX-400 series ("Accused R-Series Instrumentalities"). The Accused Instrumentalities also include graphics

processors found in many popular game consoles, *e.g.*, AMD dies with the markings below ("Accused Graphics Instrumentalities").



## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 7,467,255

18.     MediaTek incorporates each of the above paragraphs 1-17 as though fully set forth herein.

19.     On information and belief, AMD has been, and currently is, infringing the '255 Patent, in violation of 35 U.S.C. § 271, by, among other things, making, using (including testing), offering to sell, and selling within the United States, supplying or causing to be supplied in or from the United States, and importing into the United States, without authority or license, AMD products with the infringing features, including the Accused EPYC Instrumentalities, the Accused Ryzen Instrumentalities, the Accused Opteron Instrumentalities, the Accused A-Series Instrumentalities, the Accused FX Instrumentalities, the Accused R-Series Instrumentalities, and any other products that include similar functionality as described below ("Accused '255 Instrumentalities").

20.     For example, the Accused '255 Instrumentalities embody every limitation of at least claim 13 of the '255 Patent, literally or under the doctrine of equivalents, as set forth below.

The further descriptions below, which are based on publicly available information, are preliminary examples and are non-limiting.

21.     On information and belief, each of the Accused '255 Instrumentalities contains a processor or an Accelerated Processing Unit (APU), which implements the x86 System-on-Chip (SoC) technology. *See* example from the Accused Opteron Instrumentalities below.

(https://www.amd.com/en/opteron)

22.     On information and belief, the x86 SoC technology provides the Accused '255 Instrumentalities with a "Dual channel 64-bit DDR4 controller with ECC support," which calibrates and controls "64GB Max Memory." *See*, *e.g.*, https://www.amd.com/en/technologies/x86-soc. Accordingly, on information and belief, the Accused '255 Instrumentalities practice a method for calibrating a memory device, and the

memory device is being controlled by DDR3 or DDR4 memory controller within the processor or APU of the Accused '255 Instrumentalities.

*23.*    On information and belief, the x86 SoC technology also provides the Accused '255 Instrumentalities with "Four next-gen 'Excavator' x86 cores with 2MB shared L2 cache." *Id.* "Excavator" refers to the AMD Family 15h microarchitecture implemented on AMD's processors or APUs[1]. A document defining the operation and behavior of AMD Excavator Family 15h processors is known as the *BIOS and Kernel Developer's Guide (BKDG) for AMD Family 15h Models 70h-7Fh Processors* ("the BKDG")[2].

24.    On information and belief, a "Processor" of the Accused '255 Instrumentalities comprises a Compute Unit and a Northbridge, among other components. *See*, *e.g.*, the BKDG, Section 2.1. The Northbridge includes a memory controller. A schematic diagram (annotated) of a Processor as implemented in the Accused '255 Instrumentalities is reproduced below from the BKDG:

---

[1]    https://en.wikipedia.org/wiki/Excavator_(microarchitecture)
[2]    https://www.amd.com/system/files/TechDocs/55072_AMD_Family_15h_Models_70h-7Fh_BKDG.pdf



**Figure 2: A Processor**

25.     On information and belief, the Accused '255 Instrumentalities implement a number of thermal functions and thermal-related circuitry.  *See*, *e.g.*, the BKDG, Section 2.10. The thermal-related circuitry determines the temperature of the Processor, including, as demonstrated above, the temperature of the memory controller as part of the Northbridge.  *Id.* The thermal functions ensure the Processor's temperature (as detected with the thermal-related circuitry) is within a valid range by using a number of cooling mechanisms such as fan control and lowering the power consumption of the Processor.  *Id.*  (annotated).

**2.10   Thermal Functions**

Thermal functions HTC, PROCHOT_L and THERMTRIP are intended to maintain processor temperature in a valid range by:
   • Providing a signal to external circuitry for system thermal management like fan control.
   • Lowering power consumption by switching to lower-performance P-state.
   • Sending processor to the THERMTRIP state to prevent it from damage.

The processor thermal-related circuitry includes (1) the temperature calculation circuit (TCC) for determining the temperature of the processor and (2) logic that uses the temperature from the TCC.

26.     On information and belief, the Accused '255 Instrumentalities detect the operating environment (*e.g.*, temperature) of the memory controller using the thermal functions and thermal-related circuitry described above, without sending commands to an external memory device.

27.     On information and belief, subsequent to detecting a high temperature of the Processor, the Accused '255 Instrumentalities perform a number of steps, as will be detailed in the following paragraphs.  One of these steps is to place the memory device into a "self-refresh" mode, as defined in the *JESD 79-4 standard for DDR4 SDRAM* by JEDEC ("the DDR4 Standard")[3].  At the conclusion of the "self-refresh" mode, the memory controller within the Accused '255 Instrumentalities issues a "ZQCL" command in accordance with the DDR4 Standard.  *See*, the BKDG, Section 3.12, p. 375, shown below (annotated).

| 1 | ExitSelfRef: exit self refresh (after suspend to RAM or for DRAM training) command. Read, Write-1-only; Cleared-by-hardware. Reset: 0. Writing a 1 to this bit causes the DRAM controller to bring the DRAMs out of self refresh mode. It also causes the DRAM controller to issue ZQCL and MRS commands per D18F2x2E0_dct[0][MxMrsEn] for the current memory P-state if D18F2x78_dct[0][ChanVal] == 0. Software should set D18F2x78_dct[0][PtrInitReq] prior to this bit. This command should be executed by BIOS when returning from the suspend to RAM state, after the DRAM controller configuration registers are properly initialized, or when self refresh is used during DRAM training. This bit is read as 1 while the exit-self-refresh command is executing; and is read as 0 at all other times. This bit should not be set if the DCT is disabled. |
| 0 | Reserved. |

28.     "ZQCL" is a type of ZQ calibration command used to calibrate an On Resistance (Ron) of the memory device.  *See*, *e.g.*, the DDR4 Standard, Section 4.12.  The impedance value of Ron is calibrated by an off-chip driver (OCD) under an earlier DDR2 SDRAM standard.  The same calibration is called "ZQ calibration" under the DDR4 standard.  *See*, *e.g.*, *New Features of DDR3 SDRAM*, Elpida Memory, Inc. (March 2009)[4], a portion of which is reproduced below.

---

[3]    https://www.jedec.org/sites/default/files/docs/JESD79-4.pdf
[4]    https://www.micron.com/-/media/client/global/documents/products/technical-note/dram/e1503e10.pdf

**1.1.9 Output Driver Impedance (Ron), ODT and Calibrations**

**Output Driver Impedance (Ron):**
- The output driver impedance (Ron) of DQ, DQS, /DQS, and DM is selectable in the same way as DDR2 SDRAM ([A5,A1] in MR1).
- Ron may fluctuate with the process, voltage, and temperature (PVT).
  DDR2 SDRAM can calibrate Ron fluctuation due to PVT using the optional OCD (off-chip driver calibration) function, but DDR3 SDRAM uses the ZQ calibration function instead of the OCD function.

29.     Accordingly, on information and belief, the Accused '255 Instrumentalities detect a temperature of the memory controller without sending commands to the memory device, for determining whether to  send ZQCL to calibrate the impedance value of Ron of the memory device.

30.     On information and belief, upon detecting that the Processor's temperature is high, the Accused '255 Instrumentalities enter into a Hardware Thermal Control (HTC) active state. Under the HTC-active state, a number of power reduction actions are taken, including placing the Northbridge (NB) into the lowest performance P-states supported by the processor.  *See, e.g.,* the BKDG, Section 2.10.3.1.  Notably, the Accused '255 Instrumentalities remain in the HTC-active state as long as the temperature of the Processor is higher than the HTC temperature limit. *Id.*

31.     On information and belief, the Accused '255 Instrumentalities place the NB into the lowest performance P-states by performing an NB P-state Transition, as defined in Section 2.5.3.1.1 of the BKDG, shown below (annotated).  In particular, to transition from a high NB P-state to a low NB P-state, the Accused '255 Instrumentalities "stop memory traffic and place DRAM into self-refresh."

#### 2.5.3.1.1   NB P-state Transitions

Hardware selects whether to use the high or low NB P-state. Once it is determined that an NB P-state transition is necessary, the NB executes the following sequence:

1.  If transitioning from the low NB P-state to the high NB P-state, transition VDDNB voltage.
2.  If the GPU is enabled as specified by D18F5x178[SwGfxDis], wait for the display buffer to fill.
3.  Quiesce all active cores.
4.  Stop memory traffic and place DRAM into self-refresh.
5.  Transition NCLK frequency.
6.  Update NB P-state specific DRAM settings within hardware.
7.  Take DRAM out of self-refresh and allow memory traffic.
8.  Wake up cores.
9.  If transitioning from the high NB P-state to the low NB P-state, transition VDDNB voltage.

32.     Therefore, on information and belief, in order to place DRAM, *i.e.*, the memory device, into "self-refresh" mode, the Accused '255 Instrumentalities first ensure there are no pending traffic with the memory device.   In other words, the Accused '255 Instrumentalities detect an operating status of the memory controller to be "no pending traffic," to determine whether calibration of the Ron on the memory device is feasible.   *See*, *e.g.*, the BKDG, Section 2.5.6.2, shown below (annotated).

#### 2.5.6.2   DRAM Self-Refresh

DRAM is placed into self-refresh on S3 entry. In addition to S3, DRAM is placed into self-refresh in S0 in the following two scenarios:
   • NB P-state transitions (see 2.5.3.1 [NB P-states]).
   • NB C-states (see 2.5.3.2 [NB C-states]).

The following requirements must be met before hardware places DRAM into self-refresh:
   • No pending traffic.
   • One of the following is true:
      • The GPU is idle and the internal display buffer is full.
      • The internal GPU is disabled.

33.     On information and belief, the Accused '255 Instrumentalities first determine whether the temperature of the memory controller (as part of the NB and the Processor) is higher than a maximum operating temperature.   *See*, *e.g.*, the BKDG, Section 2.10.1, shown below.

A: For $T_{ctl} = T_{ctl\_max}$ to 255.875: the temperature of the part is $[T_{ctl} - T_{ctl\_max}]$ over the maximum operating temperature. The processor may take corrective actions that affect performance, such as HTC, to support the return to $T_{ctl}$ range B.

34.     On information and belief, when the temperature is high, the Accused '255 Instrumentalities engage HTC to transition the NB to a lower P-state.  As part of the NB P-state transition, the Accused '255 Instrumentalities determine whether there is no pending traffic between the memory controller and the memory device.

35.     On information and belief, when the Accused '255 Instrumentalities determine that the operating environment meets a first prerequisite (*e.g.*, temperature of the memory controller is high) and the operating status meets a second prerequisite (*e.g.*, no pending traffic at the memory controller), the Accused '255 Instrumentalities send a "ZQCL" command to the memory device (*e.g.*, DRAM) to calibrate the OCD impedance value (*e.g.*, the Ron impedance value) of the memory device.

36.     In violation of 35 U.S.C. § 271(a), AMD has infringed and is currently infringing, directly and/or through intermediaries, the '255 Patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, products that practice at least claim 13 of the '255 Patent.  These products include the Accused '255 Instrumentalities, and any other products that incorporate the Accused '255 Instrumentalities.  AMD has infringed and is currently infringing literally and/or under the doctrine of equivalents.

37.     On information and belief, AMD was aware of this patent at least as of the service of the Complaint, D.I. 1 ,filed on February 21, 2019 and served on February 22, 2019 (the "Original Complaint"), and had actual knowledge of its infringement of the '255 Patent.

38.     On information and belief, in violation of 35 U.S.C. § 271(b), AMD, subsequent to the time it first learned of the '255 Patent and at least as of the time of service of the Original

Complaint, specifically intended to induce patent infringement by third-party original equipment manufacturers (OEMs), customers, and users of the Accused '255 Instrumentalities and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that their inducing acts would cause infringement.  AMD's specific intent is inferred from 1) AMD's decision to continue its infringing conduct despite the knowledge gleaned from the Original Complaint, 2) the fact that AMD has both knowledge of the '255 Patent since the service of the Original Complaint and its specific intent to cause the OEMs', customers', and users' acts constituting infringement, and 3) AMD's marketing materials and product documentation identified below.

39.     AMD has sold and continues to sell the Accused '255 Instrumentalities to OEMs making OEM products (*e.g.*, computers, servers, laptops, tablets, and mobile devices, etc.), knowing that the Accused '255 Instrumentalities will be included in the OEM products and sold to customers in the United States in violation of U.S. patent law, and/or to original design manufacturers (ODMs), knowing that the Accused '255 Instrumentalities will ultimately be included in OEM products and sold to customers in the United States.

40.     On information and belief, AMD knows, at least as of the time of service of the Original Complaint, that many such OEM products that contain the Accused '255 Instrumentalities are made outside the United States and are imported into the United States in violation of U.S. patent law.  On information and belief, AMD also knows, at least as of the time of service of the Original Complaint, that U.S. customers of the OEMs use the OEM products containing the Accused '255 Instrumentalities in the United States in violation of U.S. patent law.

41.     AMD also publicly provides documentation, including datasheets available through AMD's publicly accessible ARK service and software developer's manuals, instructing

customers on uses of AMD's products that infringe the '255 Patent. *See, e.g.*, https://developer.amd.com/resources/developer-guides-manuals/. In addition, AMD specifically advertises and promotes the infringing use of AMD's products, including the Opteron™ X3000 Series and its equivalent. *See, e.g.*, https://www.amd.com/en/opteron.

42.     On information and belief, AMD's customers directly infringe the '255 Patent by, for example, making, using, offering to sell, and selling within the United States, and importing into the United States, without authority or license, products containing the Accused '255 Instrumentalities.

43.     AMD contributes to the infringement of the '255 Patent in violation of 35 U.S.C. § 271(c). As stated above, on information and belief AMD was aware of the '255 Patent at least as of the time of service of the Original Complaint. AMD thus offers to sell and sells within the United States the Accused '255 Instrumentalities knowing that those products constitute a material part of the claimed invention because AMD incorporates the accused components (memory controller, hardware thermal control, *etc.*) into the Accused '255 Instrumentalities.

44.     On information and belief, AMD, at least as of the time of service of the Original Complaint, knows that the Accused '255 Instrumentalities are especially made or especially adapted for use in infringing the '255 Patent because the Accused '255 Instrumentalities all contain the infringing components (memory controller, hardware thermal control, *etc.*). Furthermore, because the Accused '255 Instrumentalities contain the infringing components (memory controller, hardware thermal control, *etc.*), they are not a staple article or commodity of commerce suitable for substantial non-infringing use.

45.     In addition, AMD offers to sell and sells the Accused '255 Instrumentalities to OEMs and/or ODMs who then incorporate the Accused '255 Instrumentalities into infringing

products which are used, sold, offered for sale, and/or imported in the United States in an infringing manner.  Accordingly, AMD is liable as a contributory infringer.

46.    As a result of AMD's infringement of the '255 Patent, MediaTek has been damaged.  MediaTek is entitled to recover for damages sustained as a result of AMD's wrongful acts in an amount subject to proof at trial but no less than a reasonable royalty and/or its lost profits.

47.    In addition, AMD's infringing acts and practices have caused and are causing immediate and irreparable harm to MediaTek.

48.    On information and belief, the infringement of the '255 Patent by AMD has been and continues to be willful since the service of the Original Complaint.  As noted above, at least as of the service of the Original Complaint, AMD has actual knowledge of its infringement of the '255 Patent.  The risk of infringement identified in the Original Complaint of the '255 Patent was made known to AMD and/or was sufficiently obvious that it should have been known to AMD.  Despite this risk, AMD has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for MediaTek's patent rights.  Thus, AMD's infringing actions have been and continue to be consciously wrongful, entitling MediaTek to increased damages under 35 U.S.C. § 284.

49.    On information and belief, this is an exceptional case, which warrants an award of attorney's fees to MediaTek pursuant to 35 U.S.C. § 285.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 7,652,938

50.    MediaTek incorporates each of the above paragraphs 1-17 as though fully set forth herein.

51.    On information and belief, AMD has been, and currently is, infringing the '938 Patent, in violation of 35 U.S.C. § 271, by, among other things, making, using (including testing),

offering to sell, and selling within the United States, supplying or causing to be supplied in or from the United States, and importing into the United States, without authority or license, AMD products with infringing features, including the Accused Radeon Instrumentalities and any other products that include similar functionality as described below ("the Accused '938 Instrumentalities").

52.     For example, the Accused '938 Instrumentalities embody every limitation of at least claim 6 of the '938 Patent, literally or under the doctrine of equivalents, as set forth below. The further descriptions below, which are based on publicly available information, are preliminary examples and are non-limiting.

53.     The Accused '938 Instrumentalities are graphics processors that include a memory subsystem comprising the claimed elements as discussed below.

54.     The Accused '938 Instrumentalities include a memory.  For example, the AMD Radeon RX590 includes GDDR5 memory.  GDDR5 memory is compliant with Graphics Double Data Rate (GDDR5) SGRAM Standard set by JEDEC.



https://www.amd.com/en/products/graphics/radeon-rx-590 (annotated).

55.     The Accused '938 Instrumentalities include a memory controller for the GDDR5 memory comprising an internal clock.   For example, JEDEC Standard documentation for GDDR5, JESD212C, illustrates that the Accused '938 Instrumentalities include a controller that generates an internal clock using an oscillator and PLL/DLL.  *See* JESD212C (GDDR5) at 5.

56.     The memory controller in each of the Accused '938 Instrumentalities is operative in a calibration mode to store data with a first logic level into a first address of the memory and

to store data with a second logic level into a second address of the memory.  For example, the memory controller in each of the Accused '938 Instrumentalities is operative to enter a calibration mode such as Read Training.  *See* JESD212C (GDDR5) at 25.

57.     During Read Training, the memory controller in each of the Accused '938 Instrumentalities is operative to handle the LDFF command, which causes the Accused '938 Instrumentalities to load data to Read FIFOs via an address bus.  *See* JESD212 (GDDR5) at 26; *id*. at 5 (Fig. 18).  Any logic levels of variable length can be loaded to the FIFOs.  *Id*.  Thus, the memory controller in each of the Accused '938 Instrumentalities is operative to store data with a first logic level into a first address of the memory and to store data with a second logic level into a second address of the memory, such as by loading a pattern of data to different addresses in Read FIFOs.

58.     The memory controller in each of the Accused '938 Instrumentalities is operative to generate a read data signal by issuing continuous read commands for repeated retrieval of the data at the first and the second addresses of the memory.  For example, during Read Training, the Accused '938 Instrumentalities are operative to handle the RDTR command, which causes the Accused '938 Instrumentalities to read data from the READ FIFOs.  *See* JESD212C (GDDR5) at 28-29; *id*. Fig. 18.  The Accused '938 Instrumentalities issue the RDTR commands continuously for repeated retrieval of the data at the first and second addresses of GDDR.  *See id*. at 29.

59.     The memory controller in each of the Accused '938 Instrumentalities is operative to adjust a delay parameter until any edge of the read data signal and at least one edge of the internal clock signal are aligned, and to generate a latch clock according to the delay parameter and the internal clock.  For example, by performing Read training, the Accused '938 Instrumentalities attempt to find the data-eye center and burst frame location.  *See* JESD212C

(GDDR5) at 25. To do so, the Accused '938 Instrumentalities continue to adjust a delay parameter until any edge of the read data signal retrieved as a result of issuing RDTR is aligned with at least one edge of the internal clock signal. Specifically, as the read data signal is repeatedly retrieved from the memory, the memory controller in the Accused '938 Instrumentalities continues to check whether the edge of the read data signal is early or late relative to at least one edge of the internal clock signal and, until the alignment is achieved, adjusts a delay parameter, which is fed to a clock phase controller. *See* JESD212C (GDDR) at 5, Fig. 2.

60.     Based on the delay parameter and the internal clock, the Accused '938 Instrumentalities are then operative to generate a latch clock that is used to perform memory access at the data eye center. *See* JESD212C (GDDR5) at 25.

61.     In violation of 35 U.S.C. § 271(a), AMD has infringed and is currently infringing, directly and/or through intermediaries, the '938 Patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, products that practice at least claim 6 of the '938 Patent. These products include the Accused '938 Instrumentalities, and any other products that incorporate the Accused '938 Instrumentalities. AMD has infringed and is currently infringing literally and/or under the doctrine of equivalents.

62.     On information and belief, AMD was aware of this patent at least as of the service of the Original Complaint, and had actual knowledge of its infringement of the '938 Patent.

63.     On information and belief, in violation of 35 U.S.C. § 271(b), AMD, subsequent to the time it first learned of the '938 Patent and at least as of the time of service of the Original Complaint, specifically intended to induce patent infringement by third-party original equipment manufacturers (OEMs), customers, and users of the Accused '938 Instrumentalities and had

knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that their inducing acts would cause infringement. AMD's specific intent is inferred from 1) AMD's decision to continue its infringing conduct despite the knowledge gleaned from the Original Complaint, 2) the fact that AMD has both knowledge of the '938 Patent since the service of the Original Complaint and its specific intent to cause the OEMs', customers', and users' acts constituting infringement, and 3) AMD's marketing materials and product documentation identified below.

64.     AMD has sold and continues to sell the Accused '938 Instrumentalities to OEMs making OEM products (*e.g.*, computers, servers, laptops, tablets, etc.), knowing that the Accused '938 Instrumentalities will be included in the OEM products and sold to customers in the United States in violation of U.S. patent law, and/or to original design manufacturers (ODMs), knowing that the Accused '938 Instrumentalities will ultimately be included in OEM products and sold to customers in the United States.

65.     On information and belief, AMD, at least as of the time of service of the Original Complaint,  knows that many such OEM products that contain the Accused '938 Instrumentalities are made outside the United States and are imported into the United States in violation of U.S. patent law. On information and belief, AMD, at least as of the time of service of the Original Complaint, also knows that U.S. customers of the OEMs use the OEM products containing the Accused '938 Instrumentalities in the United States in violation of U.S. patent law.

66.     In addition, AMD specifically advertises and promotes the infringing use of AMD's products, including the Radeon RX 590 and its equivalent. *See, e.g.*, https://www.amd.com/en/products/graphics/radeon-rx-590.

67.     On information and belief, AMD's customers directly infringe the '938 Patent by, for example, making, using, offering to sell, and selling within the United States, and importing into the United States, without authority or license, products containing the Accused '938 Instrumentalities.

68.     AMD contributes to the infringement of the '938 Patent in violation of 35 U.S.C. § 271(c).  As stated above, on information and belief AMD was aware of the '938 Patent at least as of the time of service of the Original Complaint.  AMD thus offers to sell and sells within the United States the Accused '938 Instrumentalities knowing that those products constitute a material part of the claimed invention because AMD incorporates the accused components (Radeon GPUs, GDDR5, etc.) into the Accused '938 Instrumentalities.

69.     On information and belief, AMD, at least as of the time of service of the Original Complaint, knows that the Accused '938 Instrumentalities are especially made or especially adapted for use in infringing the '938 Patent because the Accused '938 Instrumentalities all contain the infringing components (Radeon GPUs, GDDR5, etc.).  Furthermore, because the Accused '938 Instrumentalities contain the infringing components (Radeon GPUs, GDDR5, etc.), they are not a staple article or commodity of commerce suitable for substantial non-infringing use.

70.     In addition, AMD offers to sell and sells the Accused '938 Instrumentalities to OEMs and/or ODMs who then incorporate the Accused '938 Instrumentalities into infringing products which are used, sold, offered for sale, and/or imported in the United States in an infringing manner.  Accordingly, AMD is liable as a contributory infringer.

71.     As a result of AMD's infringement of the '938 Patent, MediaTek has been damaged.  MediaTek is entitled to recover for damages sustained as a result of AMD's wrongful

acts in an amount subject to proof at trial but no less than a reasonable royalty and/or its lost profits.

72.     In addition, AMD's infringing acts and practices have caused and are causing immediate and irreparable harm to MediaTek.

73.     On information and belief, the infringement of the '938 Patent by AMD has been and continues to be willful since the service of the Original Complaint.  As noted above, at least as of the service of the Original Complaint, AMD has actual knowledge of its infringement of the '938 Patent.  The risk of infringement identified in the Original Complaint of the '938 Patent was made known to AMD and/or was sufficiently obvious that it should have been known to AMD.  Despite this risk, AMD has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for MediaTek's patent rights.   Thus, AMD's infringing actions have been and continue to be consciously wrongful, entitling MediaTek to increased damages under 35 U.S.C. § 284.

74.     On information and belief, this is an exceptional case, which warrants an award of attorney's fees to MediaTek pursuant to 35 U.S.C. § 285.

## COUNT III – INFRINGEMENT OF U.S. PATENT NO. 7,667,302

75.     MediaTek incorporates each of the above paragraphs 1-17 as though fully set forth herein.

76.     On information and belief, AMD has been, and currently is, infringing the '302 Patent, in violation of 35 U.S.C. § 271, by, among other things, making, using (including testing), offering to sell, and selling within the United States, supplying or causing to be supplied in or from the United States, and importing into the United States, without authority or license, AMD products with the infringing features, including the Accused Graphics Instrumentalities  and any

other products that include similar functionality as described below ("the Accused '302 Instrumentalities").

77.     For example, the Accused '302 Instrumentalities embody every limitation of at least claim 1 of the '302 Patent, literally or under the doctrine of equivalents, as set forth below. The further descriptions below, which are based on publicly available information, are preliminary examples and are non-limiting.

78.     The Accused '302 Instrumentalities are integrated circuit chip as shown in the images below:



79.     The Accused '302 Instrumentalities include an analog and/or RF circuit block as shown, for example, in the images below (annotated):



Analog and/or RF circuit on AMD Die CXD90044GB



Analog and/or RF circuit on AMD TMGZ54 Die from X949211-001

80.     The Accused '302 Instrumentalities include a seal ring structure surrounding the above identified analog and/or RF circuit block as shown, for example, in the images below (annotated):



Seal ring structure on AMD Die from CXD90044GB



Seal ring structure on AMD TMGZ54 Die from X949211-001

81.    The above identified seal ring structures include a continuous outer seal ring as shown, for example, in the images below (annotated):



A continuous outer seal ring on AMD Die CXD90044GB



A continuous outer seal ring on AMD TMGZ54 Die from X949211-001

82.    The above identified seal ring structures include a discontinuous inner seal ring divided into at least a first portion and a second portion as shown, for example, in the images below (annotated):



A discontinuous inner seal ring divided into at least a first portion and a second portion on AMD Die from CXD90044GB



A discontinuous inner seal ring divided into at least a first portion and a second portion on AMD TMGZ54 Die from X949211-001

83.    The above identified second portion is situated in front of the above identified analog and/or RF circuit block as shown, for example, in the images below (annotated):



The second portion(s) of the inner seal ring on AMD Die from CXD90044GB





The second portion(s) of the inner seal ring on AMD TMGZ54 Die from X949211-001

84.    On information and belief, the above identified second portion is for shielding a noise from interfering the analog and/or RF circuit block.

85.    In violation of 35 U.S.C. § 271(a), AMD has infringed and is currently infringing, directly and/or through intermediaries, the '302 Patent by making, using, selling, offering for

sale, and/or importing into the United States, without authority, products that practice at least claim 1 of the '302 Patent.  These products include the Accused '302 Instrumentalities, and any other products that incorporate the Accused '302 Instrumentalities.  AMD has infringed and is currently infringing literally and/or under the doctrine of equivalents.

86.     On information and belief, AMD was aware of this patent at least as of the service of the Original Complaint, and had actual knowledge of its infringement of the '302 Patent.

87.     On information and belief, in violation of 35 U.S.C. § 271(b), AMD, subsequent to the time it first learned of the '302 Patent and at least as of the time of service of the Original Complaint, specifically intended to induce patent infringement by third-party original equipment manufacturers (OEMs), customers, and users of the Accused '302 Instrumentalities and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that their inducing acts would cause infringement.  AMD's specific intent is inferred from 1) AMD's decision to continue its infringing conduct despite the knowledge gleaned from the Original Complaint, and 2) the fact that AMD has both knowledge of the '302 Patent since the service of the Original Complaint and its specific intent to cause the OEMs', customers', and users' acts constituting infringement.

88.     AMD has sold and continues to sell the Accused '302 Instrumentalities to OEMs making OEM products, knowing that the Accused '302 Instrumentalities will be included in the OEM products and sold to customers in the United States in violation of U.S. patent law, and/or to original design manufacturers (ODMs), knowing that the Accused '302 Instrumentalities will ultimately be included in OEM products and sold to customers in the United States.

89.     On information and belief, AMD, at least as of the time of service of the Original Complaint, knows that many such OEM products that contain the Accused '302 Instrumentalities

are made outside the United States and are imported into the United States in violation of U.S. patent law.  On information and belief, AMD, at least as of the time of service of the Original Complaint, also knows that U.S. customers of the OEMs use the OEM products containing the Accused '302 Instrumentalities in the United States in violation of U.S. patent law.

90.     On information and belief, AMD's customers directly infringe the '302 Patent by, for example, making, using, offering to sell, and selling within the United States, and importing into the United States, without authority or license, products containing the Accused '302 Instrumentalities.

91.     AMD contributes to the infringement of the '302 Patent in violation of 35 U.S.C. § 271(c).  As stated above, on information and belief AMD was aware of the '302 Patent at least as of the time of service of the Original Complaint.  AMD thus offers to sell and sells within the United States the Accused '302 Instrumentalities knowing that those products constitute a material part of the claimed invention because AMD incorporates the accused components (*e.g.*, certain seal ring structures) into the Accused '302 Instrumentalities.

92.     On information and belief, AMD, at least as of the time of service of the Original Complaint, knows that the Accused '302 Instrumentalities are especially made or especially adapted for use in infringing the '302 Patent because the Accused '302 Instrumentalities all contain the infringing components (*e.g.*, certain seal ring structures).  Furthermore, because the Accused '302 Instrumentalities contain the infringing components (*e.g.*, certain seal ring structures), they are not a staple article or commodity of commerce suitable for substantial non-infringing use.

93.     In addition, AMD offers to sell and sells the Accused '302 Instrumentalities to OEMs and/or ODMs who then incorporate the Accused '302 Instrumentalities into infringing

products which are used, sold, offered for sale, and/or imported in the United States in an infringing manner.  Accordingly, AMD is liable as a contributory infringer.

94.     As a result of AMD's infringement of the '302 Patent, MediaTek has been damaged.  MediaTek is entitled to recover for damages sustained as a result of AMD's wrongful acts in an amount subject to proof at trial but no less than a reasonable royalty and/or its lost profits.

95.     In addition, AMD's infringing acts and practices have caused and are causing immediate and irreparable harm to MediaTek.

96.     On information and belief, the infringement of the '302 Patent by AMD has been and continues to be willful since the service of the Original Complaint.  As noted above, at least as of the service of the Original Complaint, AMD has actual knowledge of its infringement of the '302 Patent.  The risk of infringement identified in the Original Complaint of the '302 Patent was made known to AMD and/or was sufficiently obvious that it should have been known to AMD.  Despite this risk, AMD has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for MediaTek's patent rights.  Thus, AMD's infringing actions have been and continue to be consciously wrongful, entitling MediaTek to increased damages under 35 U.S.C. § 284.

97.     On information and belief, this is an exceptional case, which warrants an award of attorney's fees to MediaTek pursuant to 35 U.S.C. § 285.

### COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 8,072,004

98.     MediaTek incorporates each of the above paragraphs 1-17 as though fully set forth herein.

99.     On information and belief, AMD has been, and currently is, infringing the '004 Patent, in violation of 35 U.S.C. § 271, by, among other things, making, using (including testing),

offering to sell, and selling within the United States, supplying or causing to be supplied in or from the United States, and importing into the United States, without authority or license, AMD products with the infringing features, including at least Ryzen 3, Ryzen 5 and Ryzen 7 of the Accused Ryzen Instrumentalities, and any other products that include similar functionality as described below ("Accused '004 Instrumentalities").

100.    For example, the Accused '004 Instrumentalities embody every limitation of at least claim 1 of the '004 Patent, literally or under the doctrine of equivalents, as set forth below. The further descriptions below, which are based on publicly available information, are preliminary examples and are non-limiting.

101.    The Accused '004 Instrumentalities are integrated circuit chips, the front packaging view of the Ryzen 7-1700 processor is shown below.



102.    The Accused '004 Instrumentalities include a silicon substrate having thereon a plurality of inter-metal dielectric (IMD) layers and a plurality of first conductive layers embedded in respective said plurality of IMD layers, as shown in the cross-section view of the Ryzen 7-1700 processor below:



103.    The Accused '004 Instrumentalities include said plurality of first conductive layers, which comprise copper.    The chemical characterization of said plurality of first conductive layers in the Ryzen 7-1700 processor is analyzed using energy-dispersive X-ray spectroscopy (EDS), and the result indicates they comprise copper:



104.    The Accused '004 Instrumentalities include a first passivation layer overlying said plurality of IMD layers (*e.g.*, IMD 10 and IMD 9) and said plurality of first conductive layers (*e.g.*, M11 and M10), as shown in the figure below (annotated):



105.    The Accused '004 Instrumentalities include a plurality of first power/ground mesh wiring lines, formed in a second conductive layer (*e.g.*, M12) overlying said first passivation layer, for distributing power signal or ground signal, as shown in the cross-section view and top-view of the M12 layer below (annotated):





106.   The Accused '004 Instrumentalities include said second conductive layer (*e.g.*, M12), which comprise aluminum, as shown in the EDS analysis result below:



107.    The Accused '004 Instrumentalities include a second passivation layer covering said second conductive layer and said first passivation layer, as shown in the figure below (annotated):



108.    In violation of 35 U.S.C. § 271(a), AMD has infringed and is currently infringing, directly and/or through intermediaries, the '004 Patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, products that practice at least

claim 1 of the '004 Patent.  These products include the Accused '004 Instrumentalities, and any other products that incorporate the Accused '004 Instrumentalities.  AMD has infringed and is currently infringing literally and/or under the doctrine of equivalents.

109.    On information and belief, AMD was aware of this patent at least as of the service of the Original Complaint, and had actual knowledge of its infringement of the '004 Patent.

110.    On information and belief, in violation of 35 U.S.C. § 271(b), AMD, subsequent to the time it first learned of the '004 Patent and at least as of the time of service of the Original Complaint, specifically intended to induce patent infringement by third-party original equipment manufacturers (OEMs), customers, and users of the Accused '004 Instrumentalities and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that their inducing acts would cause infringement.  AMD's specific intent is inferred from 1) AMD's decision to continue its infringing conduct despite the knowledge gleaned from the Original Complaint, and 2) the fact that AMD has both knowledge of the '004 Patent since the service of the Original Complaint and its specific intent to cause the OEMs', customers', and users' acts constituting infringement.

111.    AMD has sold and continues to sell the Accused '004 Instrumentalities to OEMs making OEM products (*e.g.*, computers, servers, laptops, tablets, etc.), knowing that the Accused '004 Instrumentalities will be included in the OEM products and sold to customers in the United States in violation of U.S. patent law, and/or to original design manufacturers (ODMs), knowing that the Accused '004 Instrumentalities will ultimately be included in OEM products and sold to customers in the United States.

112.    On information and belief, AMD, at least as of the time of service of the Original Complaint, knows that many such OEM products that contain the Accused '004 Instrumentalities

are made outside the United States and are imported into the United States in violation of U.S. patent law.  On information and belief, AMD, at least as of the time of service of the Original Complaint, also knows that U.S. customers of the OEMs use the OEM products containing the Accused '004 Instrumentalities in the United States in violation of U.S. patent law.

113.    On information and belief, AMD's customers directly infringe the '004 Patent by, for example, making, using, offering to sell, and selling within the United States, and importing into the United States, without authority or license, products containing the Accused '004 Instrumentalities.

114.    AMD contributes to the infringement of the '004 Patent in violation of 35 U.S.C. § 271(c).  As stated above, on information and belief AMD was aware of the '004 Patent at least as of the time of service of the Original Complaint.  AMD thus offers to sell and sells within the United States the Accused '004 Instrumentalities knowing that those products constitute a material part of the claimed invention because AMD incorporates the accused components (power and ground wires in aluminum layer, passivation layers, *etc.*) into the Accused '004 Instrumentalities.

115.    On information and belief, AMD, at least as of the time of service of the Original Complaint, knows that the Accused '004 Instrumentalities are especially made or especially adapted for use in infringing the '004 Patent because the Accused '004 Instrumentalities all contain the infringing components (power and ground wires in aluminum layer, passivation layers, *etc.*).  Furthermore, because the Accused '004 Instrumentalities contain the infringing components (power and ground wires in aluminum layer, passivation layers, *etc.*), they are not a staple article or commodity of commerce suitable for substantial non-infringing use.

116. In addition, AMD offers to sell and sells the Accused '004 Instrumentalities to OEMs and/or ODMs who then incorporate the Accused '004 Instrumentalities into infringing products which are used, sold, offered for sale, and/or imported in the United States in an infringing manner. Accordingly, AMD is liable as a contributory infringer.

117. As a result of AMD's infringement of the '004 Patent, MediaTek has been damaged. MediaTek is entitled to recover for damages sustained as a result of AMD's wrongful acts in an amount subject to proof at trial but no less than a reasonable royalty and/or its lost profits.

118. In addition, AMD's infringing acts and practices have caused and are causing immediate and irreparable harm to MediaTek.

119. On information and belief, the infringement of the '004 Patent by AMD has been and continues to be willful since the service of the Original Complaint. As noted above, at least as of the service of the Original Complaint, AMD has actual knowledge of its infringement of the '004 Patent. The risk of infringement identified in the Original Complaint of the '004 Patent was made known to AMD and/or was sufficiently obvious that it should have been known to AMD. Despite this risk, AMD has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for MediaTek's patent rights. Thus, AMD's infringing actions have been and continue to be consciously wrongful, entitling MediaTek to increased damages under 35 U.S.C. § 284.

120. On information and belief, this is an exceptional case, which warrants an award of attorney's fees to MediaTek pursuant to 35 U.S.C. § 285.

## COUNT V – INFRINGEMENT OF U.S. PATENT NO. 8,772,928

121. MediaTek incorporates each of the above paragraphs 1-17 as though fully set forth herein.

122.    On information and belief, AMD has been, and currently is, infringing the '928 Patent, in violation of 35 U.S.C. § 271, by, among other things, making, using (including testing), offering to sell, and selling within the United States, supplying or causing to be supplied in or from the United States, and importing into the United States, without authority or license, AMD products with the infringing features, including the Accused Graphics Instrumentalities and any other products that include similar functionality as described below ("the Accused '928 Instrumentalities").

123.    For example, the Accused '928 Instrumentalities embody every limitation of at least claim 1 of the '928 Patent, literally or under the doctrine of equivalents, as set forth below. The further descriptions below, which are based on publicly available information, are preliminary examples and are non-limiting.

124.    The Accused '928 Instrumentalities are integrated circuit chip as shown in the images below:



125.    The Accused '928 Instrumentalities include a semiconductor substrate as shown in the images below:

 

A semiconductor substrate in AMD Die from CXD90044GB

A semiconductor substrate in AMD TMGZ54 Die from X949211-001

126.   The Accused '928 Instrumentalities include a power/ground interconnection network in a topmost metal layer over the semiconductor substrate as shown in the images below:



The power/ground interconnection network in a topmost metal layer of AMD Die from

CXD90044GB



The power/ground interconnection network in a topmost metal layer of AMD TMGZ54 Die from

X949211-001

127.    The Accused '928 Instrumentalities include at least a bump pad on/over the power/ground interconnection network as shown in the images below:



A bump pad on/over the power/ground interconnection network of AMD Die from

CXD90044GB



A bump pad on/over the power/ground interconnection network of AMD TMGZ54 Die from

X949211-001

128.    The above identified power/ground interconnection networks include a first power/ground line connected to the bump pad and extending along a first direction, and a connection portion connected to the bump pad and extending along a second direction; wherein a plurality of fingers protrude from the connection portion as shown, for example, in the images below (annotated):



AMD Die from CXD90044GB



AMD TMGZ54 Die from X949211-001

129.    In violation of 35 U.S.C. § 271(a), AMD has infringed and is currently infringing, directly and/or through intermediaries, the '928 Patent by making, using, selling, offering for

sale, and/or importing into the United States, without authority, products that practice at least claim 1 of the 928 Patent.  These products include the Accused '928 Instrumentalities, and any other products that incorporate the Accused '928 Instrumentalities.  AMD has infringed and is currently infringing literally and/or under the doctrine of equivalents.

130.    On information and belief, AMD was aware of this patent at least as of the service of the Original Complaint, and had actual knowledge of its infringement of the '928 Patent.

131.    On information and belief, in violation of 35 U.S.C. § 271(b), AMD, subsequent to the time it first learned of the '928 Patent and at least as of the time of service of the Original Complaint, specifically intended to induce patent infringement by third-party original equipment manufacturers (OEMs), customers, and users of the Accused '928 Instrumentalities and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that their inducing acts would cause infringement.  AMD's specific intent is inferred from 1) AMD's decision to continue its infringing conduct despite the knowledge gleaned from the Original Complaint, and 2) the fact that AMD has both knowledge of the '928 Patent since the service of the Original Complaint and its specific intent to cause the OEMs', customers', and users' acts constituting infringement.

132.    AMD has sold and continues to sell the Accused '928 Instrumentalities to OEMs making OEM products, knowing that the Accused '928 Instrumentalities will be included in the OEM products and sold to customers in the United States in violation of U.S. patent law, and/or to original design manufacturers (ODMs), knowing that the Accused '928 Instrumentalities will ultimately be included in OEM products and sold to customers in the United States.

133.    On information and belief, AMD, at least as of the time of service of the Original Complaint, knows that many such OEM products that contain the Accused '928 Instrumentalities

are made outside the United States and are imported into the United States in violation of U.S. patent law.  On information and belief, AMD, at least as of the time of service of the Original Complaint, also knows that U.S. customers of the OEMs use the OEM products containing the Accused '928 Instrumentalities in the United States in violation of U.S. patent law.

134.    On information and belief, AMD's customers directly infringe the '928 Patent by, for example, making, using, offering to sell, and selling within the United States, and importing into the United States, without authority or license, products containing the Accused '928 Instrumentalities.

135.    AMD contributes to the infringement of the '928 Patent in violation of 35 U.S.C. § 271(c).  As stated above, on information and belief AMD was aware of the '928 Patent at least as of the time of service of the Original Complaint.  AMD thus offers to sell and sells within the United States the Accused '928 Instrumentalities knowing that those products constitute a material part of the claimed invention because AMD incorporates the accused components (*e.g.*, certain power line structures) into the Accused '928 Instrumentalities.

136.    On information and belief, AMD, at least as of the time of service of the Original Complaint, knows that the Accused '928 Instrumentalities are especially made or especially adapted for use in infringing the '928 Patent because the Accused '928 Instrumentalities all contain the infringing components (*e.g.*, certain power line structures).  Furthermore, because the Accused '928 Instrumentalities contain the infringing components (*e.g.*, certain power line structures), they are not a staple article or commodity of commerce suitable for substantial non-infringing use.

137.    In addition, AMD offers to sell and sells the Accused '928 Instrumentalities to OEMs and/or ODMs who then incorporate the Accused '928 Instrumentalities into infringing

products which are used, sold, offered for sale, and/or imported in the United States in an infringing manner. Accordingly, AMD is liable as a contributory infringer.

138.   As a result of AMD's infringement of the '928 Patent, MediaTek has been damaged. MediaTek is entitled to recover for damages sustained as a result of AMD's wrongful acts in an amount subject to proof at trial but no less than a reasonable royalty and/or its lost profits.

139.   In addition, AMD's infringing acts and practices have caused and are causing immediate and irreparable harm to MediaTek.

140.   On information and belief, the infringement of the '928 Patent by AMD has been and continues to be willful since the service of the Original Complaint. As noted above, at least as of the service of the Original Complaint, AMD has actual knowledge of its infringement of the '928 Patent. The risk of infringement identified in the Original Complaint of the '928 Patent was made known to AMD and/or was sufficiently obvious that it should have been known to AMD. Despite this risk, AMD has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for MediaTek's patent rights. Thus, AMD's infringing actions have been and continue to be consciously wrongful, entitling MediaTek to increased damages under 35 U.S.C. § 284.

141.   On information and belief, this is an exceptional case, which warrants an award of attorney's fees to MediaTek pursuant to 35 U.S.C. § 285.

## COUNT VI – INFRINGEMENT OF U.S. PATENT NO. 8,860,544

142.   MediaTek incorporates each of the above paragraphs 1-17 as though fully set forth herein.

143.   On information and belief, AMD has been, and currently is, infringing the '544 Patent, in violation of 35 U.S.C. § 271, by, among other things, making, using (including testing),

offering to sell, and selling within the United States, supplying or causing to be supplied in or from the United States, and importing into the United States, without authority or license, AMD products with the infringing features, including at least Ryzen 3, Ryzen 5 and Ryzen 7 of the Accused Ryzen Instrumentalities,  and any other products that include similar functionality as described below ("the Accused '544 Instrumentalities").

144.    For example, the Accused '544 Instrumentalities embody every limitation of at least claim 7 of the '544 Patent, literally or under the doctrine of equivalents, as set forth below. The further descriptions below, which are based on publicly available information, are preliminary examples and are non-limiting.

145.    The Accused '544 Instrumentalities include integrated inductor as shown in the images below:



146.    The above identified integrated inductor includes an aluminum winding, having a thickness of about 3 micrometers as shown, for example, in the images below (annotated):






147.    The above identified integrated inductor includes a passivation layer, disposed under the aluminum winding, wherein the aluminum winding does not extend into the passivation layer, as shown, for example, in the images below (annotated):



passivation layer; the aluminum winding does not extend into the passivation layer



148.   The above identified integrated inductor includes a plurality of copper metal layers, disposed under the passivation layer as shown, for example, in the images below (annotated):



149.    The above identified integrated inductor is formed in an integrated circuit device. Such device includes a silicon substrate and plurality of metal layers (M1 through M11) and at least one of them consists of copper as shown in the images below:



150.    The distance between the bottom surface of the above identified integrated inductor and a main surface of the substrate is about 5.9 micrometers as shown, for example, in the image below (annotated):



151.   In violation of 35 U.S.C. § 271(a), AMD has infringed and is currently infringing, directly and/or through intermediaries, the '544 Patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, products that practice at least claim 7 of the '544 Patent.  These products include the Accused '544 Instrumentalities, and any other products that incorporate the Accused '544 Instrumentalities.  AMD has infringed and is currently infringing literally and/or under the doctrine of equivalents.

152.   On information and belief, AMD was aware of this patent at least as of the service of the Original Complaint, and had actual knowledge of its infringement of the '544 Patent.

153.   On information and belief, in violation of 35 U.S.C. § 271(b), AMD, subsequent to the time it first learned of the '544 Patent and at least as of the time of service of the Original Complaint, specifically intended to induce patent infringement by third-party original equipment manufacturers (OEMs), customers, and users of the Accused '544 Instrumentalities and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that their inducing acts would cause infringement.  AMD's specific intent is inferred from 1) AMD's decision to continue its infringing conduct despite the knowledge gleaned from the Original Complaint, and 2) the fact that AMD has both knowledge of the '544 Patent since the service of the Original Complaint and its specific intent to cause the OEMs', customers', and users' acts constituting infringement.

154.   AMD has sold and continues to sell the Accused '544 Instrumentalities to OEMs making OEM products (*e.g.*, computers, desktops, *etc.*), knowing that the Accused '544 Instrumentalities will be included in the OEM products and sold to customers in the United States in violation of U.S. patent law, and/or to original design manufacturers (ODMs), knowing

that the Accused '544 Instrumentalities will ultimately be included in OEM products and sold to customers in the United States.

155.    On information and belief, AMD, at least as of the time of service of the Original Complaint, knows that many such OEM products that contain the Accused '544 Instrumentalities are made outside the United States and are imported into the United States in violation of U.S. patent law.  On information and belief, AMD, at least as of the time of service of the Original Complaint, also knows that U.S. customers of the OEMs use the OEM products containing the Accused '544 Instrumentalities in the United States in violation of U.S. patent law.

156.    On information and belief, AMD's customers directly infringe the '544 Patent by, for example, making, using, offering to sell, and selling within the United States, and importing into the United States, without authority or license, products containing the Accused '544 Instrumentalities.

157.    AMD contributes to the infringement of the '544 Patent in violation of 35 U.S.C. § 271(c).  As stated above, on information and belief AMD was aware of the '544 Patent at least as of the time of service of the Original Complaint.  AMD thus offers to sell and sells within the United States the Accused '544 Instrumentalities knowing that those products constitute a material part of the claimed invention because AMD incorporates the accused components (*e.g.*, certain inductor structures) into the Accused '544 Instrumentalities.

158.    On information and belief, AMD, at least as of the time of service of the Original Complaint, knows that the Accused '544 Instrumentalities are especially made or especially adapted for use in infringing the '544 Patent because the Accused '544 Instrumentalities all contain the infringing components (*e.g.*, certain inductor structures).  Furthermore, because the Accused '544 Instrumentalities contain the infringing components (*e.g.*, certain inductor

structures), they are not a staple article or commodity of commerce suitable for substantial non-infringing use.

159.    In addition, AMD offers to sell and sells the Accused '544 Instrumentalities to OEMs and/or ODMs who then incorporate the Accused '544 Instrumentalities into infringing products which are used, sold, offered for sale, and/or imported in the United States in an infringing manner.  Accordingly, AMD is liable as a contributory infringer.

160.    As a result of AMD's infringement of the '544 Patent, MediaTek has been damaged.  MediaTek is entitled to recover for damages sustained as a result of AMD's wrongful acts in an amount subject to proof at trial but no less than a reasonable royalty and/or its lost profits.

161.    In addition, AMD's infringing acts and practices have caused and are causing immediate and irreparable harm to MediaTek.

162.    On information and belief, the infringement of the '544 Patent by AMD has been and continues to be willful since the service of the Original Complaint.  As noted above, at least as of the service of the Original Complaint, AMD has actual knowledge of its infringement of the '544 Patent.  The risk of infringement identified in the Original Complaint of the '544 Patent was made known to AMD and/or was sufficiently obvious that it should have been known to AMD.  Despite this risk, AMD has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for MediaTek's patent rights.   Thus, AMD's infringing actions have been and continue to be consciously wrongful, entitling MediaTek to increased damages under 35 U.S.C. § 284.

163.    On information and belief, this is an exceptional case, which warrants an award of attorney's fees to MediaTek pursuant to 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, MediaTek prays for judgment as follows:

a)  That AMD has infringed, and unless enjoined will continue to infringe literally and/or under the doctrine of equivalents under 35 U.S.C. § 271(a), (b), and/or (c), each of the Asserted Patents;

b)  That AMD has willfully infringed each of the Asserted Patents;

c)  That AMD, its officers, agents, servants, and employees, and those persons in active concert or participation with any of them, be preliminarily and permanently enjoined from commercially manufacturing, using, offering for sale, selling in the United States, or importing into the United States, the Accused Instrumentalities and any other product that infringes or induces or contributes to the infringement of the Asserted Patents, prior to the expiration date of the last to expire of those patents;

d)  That MediaTek be awarded monetary relief sufficient to compensate MediaTek for damages resulting from AMD's infringement of the Asserted Patents, including a reasonable royalty and/or lost profits under 35 U.S.C. § 284, and that such monetary relief be awarded to MediaTek with prejudgment and post-judgment interest;

e)  That MediaTek be awarded enhanced damages, up to and including trebling of the damages awarded to MediaTek;

f)  That MediaTek be awarded the attorneys' fees, costs, and expenses that it incurs prosecuting this action under 35 U.S.C. § 285 and;

g)  That MediaTek be awarded such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, MediaTek hereby demands a trial by jury on all issues triable to a jury.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*

_____
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)

OF COUNSEL:                                          1201 North Market Street
                                                    P.O. Box 1347
Kevin P.B. Johnson                                  Wilmington, DE  19899
QUINN EMANUEL URQUHART & SULLIVAN, LLP              (302) 658-9200
555 Twin Dolphin Dr., 5th Floor                     jblumenfeld@mnat.com
Redwood Shores, CA  94065                           began@mnat.com
(650) 801-5000

Edward J. DeFranco                                  *Attorneys for Plaintiffs*
Eric Huang
Brian P. Biddinger
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
(212) 849-7000

April 29, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on April 29, 2019, upon the following in the manner indicated:

| | |
|---|---|
| Frederick L. Cottrell, III, Esquire<br>Sara M. Metzler, Esquire<br>RICHARDS, LAYTON & FINGER, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, DE  19801<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Mark Samuels, Esquire<br>Xin-Yi Zhou, Esquire<br>Ryan Yagura, Esquire<br>Nicholas Whilt, Esquire<br>O'MELVENY & MYERS LLP<br>400 South Hope Street, 18th Floor<br>Los Angeles, CA 90071-2899<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Marc J. Pensabene, Esquire<br>O'MELVENY & MYERS LLP<br>Times Square Tower<br>7 Times Square<br>New York, NY 10036<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |

*/s/ Brian P. Egan*

_____

Brian P. Egan (#6227)